| | |
|---|---|
| CHRISTOPHER DAWES and DEBRA MALONEY, Individually and on Behalf of All Others Similarly Situated, | ) Case No.: 17-cv-78 ) ) **CLASS ACTION COMPLAINT** ) |
| Plaintiffs, vs. | ) ) ) **Jury Trial Demanded** |
| FIRSTSOURCE ADVANTAGE, LLC, and LVNV FUNDING, LLC | ) ) ) ) |
| Defendants. | ) |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Christopher Dawes is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Debra Maloney is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiffs are each a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect a debt from them allegedly incurred for personal, family or household purposes.

6. Defendant Firstsource Advantage, LLC ("Firstsource") is a debt collection agency with its principal offices located at 205 Bryant Woods South, Amherst, NY 14228.

7. Firstsource is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Firstsource is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Firstsource is a debt collector as defined in 15 U.S.C. § 1692a.

9. LVNV Funding, LLC ("LVNV") is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time Firstsource acquires them.

10. The FDCPA treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. 15 U.S.C. § 1692a(6)(F)(iii); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003), *citing Bailey v. Sec. Nat'l Serving Corp.*, 154 F.3d 384, 387 (7th Cir. 1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1998); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

11. LVNV uses third party debt collectors, including Firstsource, to collect allegedly defaulted debts that have been assigned.

12. A company meeting the definition of a "debt collector" under the FDCPA (here, LVNV) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees

2

who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## FACTS

### *Dawes Letter*

13. Prior to October 14, 2016, Plaintiff Dawes' account with HSBC Bank Nevada, N.A. went into default.

14. Prior to October 14, 2016, and after Plaintiff's account with HSBC Bank Nevada, N.A. was in default, HSBC Bank Nevada, N.A. sold or otherwise assigned the ownership rights to Plaintiff's account to LVNV.

15. On or about October 14, 2016, Firstsource mailed a debt collection letter to Plaintiff Dawes regarding an alleged debt, allegedly owed to "LVNV Funding, LLC" ("LVNV") and originally owed to "HSBC Bank Nevada, N.A." A copy of this letter is attached to this complaint as Exhibit A.

16. Upon information and belief, the alleged debt that Firstsource was attempting to collect was a credit card account, used only for personal, family or household purposes.

17. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

18. Upon information and belief, Exhibit A is a form debt collection letter used by Firstsource to attempt to collect alleged debts.

19. Upon information and belief, Exhibit A is the first written communication that Firstsource sent to Plaintiff regarding the alleged debt to which Exhibit A refers.

20. Exhibit A contains the following text:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

21. The above language in Exhibit A is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

22. Exhibit A also contains the following settlement offer:

> If you wish to settle this account for a lump sum payment of $60.25 within 45 days from the date of this letter, please contact one of our representatives to discuss this settlement. This offer will remain open for 45 days from the date of this letter and we are not obligated to renew this offer. If you are unable to take advantage of this offer within the 45 days allotted, please contact one of our representatives to discuss payment options. Should you choose to accept this offer, please enclose your payment in the envelope provided and make your check or money order payable to Firstsource Advantage, LLC.

23. The above offer states that it "will remain open for 45 days from the date of this letter and we are not obligated to renew this offer." The letter further states, "If you are unable to take advantage of this offer within the 45 days allotted, please contact one of our representatives to discuss payment options." Exhibit A.

24. Thus, in order to accept the settlement offer, Exhibit A requires Plaintiff to make the settlement payment within 45 days of the date of the letter. Exhibit A.

25. If Exhibit A was actually mailed on October 14, 2016, the 30 day validation period identified in Exhibit A would end only a few days before the settlement offer in Exhibit A expires. *See* 15 U.S.C. § 1692g(a).

### *FDCPA Violations*

4

26. <u>Exhibit A</u> is confusing to the unsophisticated consumer because they demand a payment within the validation period or shortly thereafter, but do not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

27. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in <u>Exhibit A</u>.

28. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).

29. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

30. Moreover, once a consumer sends a dispute in writing, the creditor is under no obligation to provide verification in any specific amount of time, or even to provide verification at all, so long as the debt collector ceases collection efforts until it does so. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.")

31. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end

5

Case 2:17-cv-00078-WED    Filed 01/18/17    Page 5 of 14    Document 1

of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

32. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offers in Exhibit A. It is likely that the settlement offer would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether to accept the settlement offer.

33. The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers (and specifically the unsophisticated consumer) from exercising their validation rights.

34. Defendant did not include explanatory language in Exhibit A, *see, eg. Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

35. In order to preserve the settlement offer in the event of a written dispute, and to preserve the 30-day validation period itself, any explanatory language should make clear that a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

36. There is no requirement that a consumer make a showing of materiality for a debt collector's failure to comply with 15 U.S.C. § 1692g(a). *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

37. For the purposes of Plaintiff's claims under 15 U.S.C. § 1692e, in general, false, misleading or confusing statements about the debt itself, or about the creditor's, debtor's or debt

collector's rights or intentions, are all material. *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

### *Maloney Letter*

38. On or around October 28, 2016, Firstsource mailed a debt collection letter to Plaintiff Maloney regarding an alleged debt, allegedly owed to "Capital One Bank (USA), N.A." ("Capital One"). A copy of this letter is attached to this complaint as Exhibit B.

39. The alleged debt identified in Exhibit B is an alleged credit card debt, used only for personal, family or household purposes.

40. Upon information and belief, Exhibit B is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

41. Upon information and belief, Exhibit B is a form debt collection letter used by Firstsource to attempt to collect alleged debts.

42. Exhibit B contains the following text:

> We want to inform you that failure to resolve this debt will result in your account being forwarded by CAPITAL ONE BANK (USA), N.A. to an attorney in your state for possible legal action. You will be notified before a lawsuit is brought against you for failure to resolve this debt. To date, no attorney has reviewed your account and no decision has been made to take legal action.

Exhibit B.

43. Exhibit B also states:

> We are happy to offer you the opportunity to pay less than you owe to settle your account. If you pay $4164.66 by 11-28-2016, we will consider your account settled and collection efforts will stop on the remaining balance.

> We would like to help you avoid any legal action by finding a payment solution for you. Please give us a call at 1-855-800-3149 before 11-28-2016 to discuss this settlement or other payment options. Our agents are experienced in helping customers choose the programs that best suit their needs.

44. The above language is false, misleading and confusing to the unsophisticated consumer.

45. The statement in <u>Exhibit B</u> that the client (i.e. Capital One) will forward "the account to an attorney in your state for possible legal action" if Plaintiff does not resolve the debt with Firstsource by 11-28-2016 is false and misleading to the unsophisticated consumer.

46. Firstsource's statement in <u>Exhibit B</u> misleads the consumer as to both Firstsource's knowledge of and involvement in Capital One's collection processes, and the probability of legal action to collect the debt.

47. <u>Exhibit B</u> tells the consumer that if payment arrangements are not made, Capital One *will* forward the consumer's account to an attorney. Firstsource has no basis to make that statement, which is false and misleading.

48. Capital One is a huge, national credit card lender. It does not forward every allegedly delinquent account, or even every account belonging to a class member in this action, to an attorney if not resolved in non-attorney collections. Upon information and belief, Capital One often sells delinquent accounts to debt buyers, or retains another non-attorney debt collector, or takes no action, instead of litigating.

49. Firstsource is merely a debt collector, authorized only to use mail and telephone to collect debts.

50. Upon information and belief, Firstsource has no inside information as to whether Capital One would ultimately forward Plaintiff's or any class member's account to an attorney or take any other action.

51. Firstsource's misrepresentation is a material misrepresentation because it misleads the unsophisticated consumer about risk of legal action. *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

8

52. The unsophisticated consumer would believe that if she did not pay the settlement amount or make payment arrangements with Firstsource by 11-28-2016, a lawsuit would be filed against her by Capital One. The unsophisticated consumer would be intimidated into paying Firstsource over other creditors who do not use such false tactics based on a false belief that a lawsuit would be brought against her is she misses the 11-28-2016 deadline.

53. Moreover, almost two months after the stated deadline of 11-28-2016 has passed, Plaintiff Maloney has not received notice of any lawsuit filed by Capital One against her regarding the above account.

54. Plaintiffs were confused by Exhibit A and Exhibit B.

55. The unsophisticated consumer would be confused by Exhibit A and Exhibit B.

56. Plaintiffs had to spend time and money investigating Exhibit A and Exhibit B.

57. Plaintiffs had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiffs on the consequences of Exhibit A and Exhibit B.

58. The FDCPA presumes that violations cause injury to consumers. Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

59. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

60. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

61. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

62. 15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

63. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

64. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

10

65. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

## COUNT I – FDCPA

66. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. Count I is brought on behalf of Plaintiff Dawes.

68. Count I is brought against Firstsource and LVNV.

69. The statement on Exhibit A that "If you cannot make the settlement payment by 11/12/2016, please contact us to make alternative arrangements" conflicts with and overshadows the debt validation notice, in that it demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

70. Exhibit A is confusing, deceptive, and/or misleading to the unsophisticated consumer.

71. 15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**
…
Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

72. Defendants violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692g.

## COUNT II – FDCPA

73. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

74. Count II is brought on behalf of Plaintiff Maloney.

11

75. Count II is brought against Firstsource.

76. <u>Exhibit B</u> includes false statements that Capital One *will* forward the consumer's account to an attorney if payment arrangements are not made with Firstsource.

77. Firstsource's statement is false and misleading. Firstsource has no basis to claim that the account "will" be sent to an attorney because Capital One does not send every delinquent account, or even every account belonging to a class member in this action, to an attorney.

78. <u>Exhibit B</u> misleads the unsophisticated consumer about Firstsource's involvement in the collection process, and the probability that Capital One *will* take legal action to collect the debt.

79. Firstsource violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10) and 1692f.

## CLASS ALLEGATIONS

80. Plaintiffs bring this action on behalf of two classes.

81. Class One consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between January 18, 2016 and January 18, 2017, inclusive, (e) that was not returned by the postal service. Class One shall be known as the Overshadowing class. Plaintiff Dawes is the designated representative of the "Overshadowing" class.

82. Class Two consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit B</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between January 18, 2016 and January 18, 2017, inclusive, (e) that was not returned by the postal service. Class Two

shall be known as the "Legal Action" class. Plaintiff Maloney is the designated representative of the Legal Action class.

83. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

84. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with 15 U.S.C. § 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f and 1692g.

85. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

86. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

87. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

88. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated:  January 18, 2017

                              **ADEMI & O'REILLY, LLP**

               By:    /S/ John D. Blythin
                         Shpetim Ademi (SBN 1026973)
                         John D. Blythin (SBN 1046105)
                         Mark A. Eldridge (SBN 1089944)
                         Denise L. Morris (SBN 1097911)
                         3620 East Layton Avenue
                         Cudahy, WI 53110
                         (414) 482-8000
                         (414) 482-8001 (fax)
                         sademi@ademilaw.com
                         jblythin@ademilaw.com
                         meldridge@ademilaw.com
                         dmorris@ademilaw.com